21 So.2d 707

### POLAND v. STATE.

#### 7 Div. 732.

Court of Appeals of Alabama.

Feb. 13, 1945.

Rehearing Denied Feb. 27, 1945.

Chas. Douglass, of Anniston, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and Frank N. Savage, Asst. Atty. Gen., for the State.

40

BRICKEN, Presiding Judge.

The prosecution in this case was based upon the Statute Title 14, Section 27, Code 1940; which makes it unlawful for any person, who with intent to defraud sets fire to or burns, or causes to be burned, or aid or procured the burning of an automobile the property of himself, etc., the offense being designated as arson in the third degree.

In the instant case the indictment charged this appellant, and J. L. Jacks, with the violation of said Statute. A severance was demanded, and granted, and this appellant, Sam Poland, was put to trial upon said charge.

The essential elements of the offense, as stated by the trial judge in his oral charge to the jury, are as follows:

"You will observe then that there are several different elements contained in this charge. One of them is that a certain— that an automobile was involved in this case; the second allegation is that that automobile was the property of one J. L. Jacks and then the indictment proceeds to charge that this defendant here either set fire to that car, or that he burned it, or that he caused it to be burned, and, if none of those, that he aided or procured the burning of the automobile, and, lastly, that he had at the time of that alleged act the intention to defraud someone."

The evidence, both for the State and defendant, tended to show that about 6 o'clock on the afternoon of the day before the car burned, that appellant borrowed the car in question from the owner thereof, J. L. Jacks. As to this there is no dispute or conflict. The testimony further discloses, without dispute, that Poland was to return the car the next night thereafter. Poland thereupon drove off in the car, and afterwards discovered that the trunk of automobile was filled with a lot of new goods; consisting of bed sheets, pillow cases, blankets, window curtains, window shades, new tapestry and other articles of like character.

The testimony discloses, without dispute, that Jacks was engaged in the business of selling articles such as were found in the trunk of the car.

The purpose for which Poland borrowed the car as stated by him was in no sense commendable, stating, as he did, he borrowed it in order to go and get a load of whiskey. This fact, of course, in no sense could control or materially affect any of the issues involved upon the trial of this case; other than to refute the insistence that he set fire to or burned the car with intent to defraud, as the indictment charges. Poland, the defendant, was the only person present when the car took fire and from his testimony the fire started in the car of itself and that he in no manner contributed to its burning by setting it on fire. As to the manner in which the car caught fire, the appellant testified substantially that in an isolated section of the county, and at about sixteen miles from Anniston, while on his way to get a load of whiskey, the front seat of the car being covered with thick paper, and that he was a constant smoker of cigarettes; he first observed fire, a small flame, just to his right on the front seat; that he put this out with his hand, burning his finger, and that he later showed this wound to Mr. Whitten (one of the State's witnesses). After putting out this fire, which he thought was completely done, and he had proceeded about a half mile further, flames came up from back of the seat in the car and destroyed it. It was about eight o'clock at night when the car burned. He also testified that he had procured six one gallon empty cans in which to put the whiskey and that when the car got on fire he saw the lights of another automobile coming towards him about half mile distant and fearing it was officers of the law, he got the six cans out of the car in order that they might not see them and then he left the burning car and

later on, made his way back to Anniston and told Mr. Jacks about the car having been destroyed by fire.

Pending the trial the testimony was allowed to take a very wide scope, some of which was of very doubtful propriety. But it is clearly apparent that the able trial judge was very patient and manifestly very fair to counsel for the respective parties. However, after all is said and done, of course the vital and controlling question is whether or not the evidence under the required measure of proof was sufficient to convince the jury that the automobile in question was burned by the defendant with the intent to defraud, as the indictment charged.

Appellant insists that the undisputed facts in this case refute such a proposition conclusively. First, that it clearly appears this appellant had no motive to commit the act, and that there is no evidence even tending to show that he had and owned any pecuniary interest in the car, and further there is a total lack of any testimony showing or tending to show that he agreed or consented or was even requested to burn the car for the owner Mr. Jacks. This defendant it is insisted could in no manner have been benefitted by so doing.

The question then recurs as to the other defendant Mr. Jacks. It is true there was an insurance policy on the car conditioned in the event of loss by fire to pay the actual cash value of the car at the time of its destruction. No specific amount was provided to be paid. There was a lien on the car under the sales contract and a balance due thereon of $610.22, and of course the fire insurance was payable to the lien holder to the extent of the balance due. The value of the car at the time of its destruction was shown, by the only testimony on this question, to be "$500.00 or $600.00 at the most." As stated, at the time the car was borrowed from Mr. Jacks and driven away by Poland, it contained a large quantity of new goods or merchandise above noted, which belonged to Jacks also. While the testimony is silent as to the total value of the merchandise in the car, it necessarily was of some appreciable value under these undisputed facts.

Relative to the foregoing, counsel for appellant, in briefs filed, makes the following earnest insistence, viz.:

"The circumstances surrounding this fire are not sufficient to show an intent to burn. Appellant states that he borrowed the car on the evening of January 1, 1942, and had it out all night. According to State witness, Josephine Shelnutt, this car was borrowed by appellant from J. L. Jacks while the two were at her home on the afternoon of January 2, 1942. She is evidently mistaken as to the particular date. The defense testimony indicates that it was borrowed at the Shelnutt home on January 1, instead of January 2. If there had been arson intent, the car would have been burned before the extensive winding and twisting through bad roads. If there had been arson intent, the costly linen and draperies in the trunk would have been removed. If there had been arson intent, there most surely would have been a motive, something to gain. True, there was insurance, and J. L. Jacks, the owner, was indicted along with appellant. But a fire would not make gain either for Poland or Jacks. The insurance was approximately on a level with the debt, and therefore a fire would not yield profit to Jacks."

It appears there is much plausibility in the above quoted insistence.

Appellant has assigned errors based upon numerous grounds. We see no necessity of discussing in detail each of these assignments, nor all of the innumerable exceptions reserved to the court's rulings pending the trial. The motion of the defendant for a new trial we think, and so hold, should have been granted and reversible error obtained in the action of the trial court in overruling and denying said motion.

Reversed and remanded.

CARR, J., not sitting.